UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Keith Eugene Washington,

    Petitioner,

Case No. 17-cv-5054 (DWF/SER)

v.

**REPORT AND RECOMMENDATION**

Michelle Smith,

    Respondent.

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the Court on Keith Eugene Washington's ("Washington") Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [Doc. No. 1]. This matter is before the undersigned pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends denying Washington's Petition.

**I.   BACKGROUND**

Washington was convicted of both first- and second-degree sexual misconduct, first-degree aggravated robbery, and first-degree assault. *See* (Pet. at 1);[1] (State's Mem.) [Doc. No. 13 at 1]; *see also State v. Washington*, No. A16-1192, 2017 WL 1842830, at *1 (Minn. Ct. App. May 8, 2017). Washington appealed his conviction to the Minnesota Court of Appeals, where his appointed counsel challenged Washington's conviction and sentence in light of the following: (1) the search of Washington's grocery bag without a warrant; (2) the swabbing of Washington's hands that went beyond the scope of an issued warrant; (3) the admission of Washington's past

---

[1]   When referencing the Petition, CM/ECF pagination is used.

2

acts of sexual misconduct; (4) Washington's eligibility to receive a life sentence; and (5) the trial court's enhancement of Washington's sentence beyond the statutory maximum. (App.) [Doc. No. 14 at 132–33].[2] Washington also submitted a pro se brief and raised additional issues related to the alleged: (1) empaneling of biased jurors; (2) prosecutorial misconduct; (3) violation of his speedy trial rights; and (4) cumulative errors that warranted reversal. (App. at 109–121); *see also Washington*, 2017 WL 1842830, at *5.

The Minnesota Court of Appeals found Washington's arguments regarding the suppression of evidence unavailing.[3] *See Washington*, 2017 WL 1842830, at *2. As it relates to the search of Washington's grocery bag, the court of appeals stated:

> Here, witnesses reported that Washington might be carrying a weapon. Police therefore had two reasons to seize the grocery bag before conducting Washington's *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] frisk: a grocery bag could offer Washington immediate access to a weapon and his possession of the bag would physically hamper the police in conducting the frisk. Thus . . . we hold that the officers' seizure of Washington's bag was within the scope of a *Terry* frisk.

*Id.* Furthermore, the Minnesota Court of Appeals concluded that contents of the bag would have been inevitably discovered because "after police identified Washington, they searched his name and discovered an outstanding warrant for his arrest." *See id.* at *2–3. With respect to the swabbing of Washington's hands, the Minnesota Court of Appeals was "troubled by the fact that a warrantless search of Washington's hands took place, even though officers had sufficient time to obtain a warrant to collect DNA from other parts of Washington's body." *Id.* at *3. Nevertheless, the court found that this was harmless error because it determined that this DNA

---

[2]   When referencing the Appendix, CM/ECF pagination is used.
[3]   Because this Court concludes that Washington's suppression arguments are the only grounds that are fairly presented, it focuses on these aspects of the Minnesota Court of Appeal's decision.

evidence was unattributable to the jury verdict. *See id.* Specifically, the Minnesota Court of Appeals concluded:

> Other than the disputed DNA evidence, the evidence of Washington's guilt included his proximity to the crime within minutes after its occurrence, his likeness to the victim's description of the perpetrator, other properly admitted DNA evidence taken from the victim's clothing and Washington's body that linked Washington to the victim, the victim's recognition of Washington's voice at trial, and Washington's possession of the victim's missing phone. The disputed DNA evidence was offered by the state among other DNA evidence properly admitted at trial and was not emphasized. At closing, the state summarized all of the DNA evidence and explained that the DNA on Washington's finger confirmed that he had contact with the victim's body. On this record, we conclude that the jury's guilty verdict is surely unattributable to the challenged DNA evidence.

*Id.*

Washington petitioned the Minnesota Supreme Court for review, raising the following issues: (1) was the search of Washington's grocery bag a violation of *Terry*; (2) did the Minnesota Court of Appeals err when it considered certain inevitable discovery arguments for the first time on appeal; (3) did the Minnesota Court of Appeals "err by upholding the search of [Washington's] bag"; (4) did the Minnesota Court of Appeals err by determining that the contents of Washington's grocery bag would be inevitably discovered on the basis of Washington's outstanding warrant for his arrest; and (5) did the Minnesota Court of Appeals err when it held the swabbing of Washington's fingernails was valid as a search incident to arrest. (App. at 14–15, 19–24). Washington did not submit a pro se brief to the Minnesota Supreme Court. *See generally* (App.). The Minnesota Supreme Court denied review on July 8, 2017. (*Id.* at 11).

Washington's instant Petition raises seven grounds: (1) cumulative errors at trial; (2) empaneling of biased jury members; (3) failure to suppress the results of the search of his grocery bag; (4) failure to suppress the DNA test that allegedly exceeded the scope of the search

warrant; (5) ineffective assistance of trial counsel; (6) a biased trial judge; and (7) violations of his speedy trial rights. *See* (Pet. at 5–13).

First, Respondent argues that grounds one, two, five, six, and seven of Washington's Petition are procedurally defaulted. *See* (State's Mem. at 3, 5–6). Respondent next argues that the Minnesota Court of Appeals decision regarding Washington's exhausted grounds were not "contrary to or involve an unreasonable application of clearly established federal law." (*Id.* at 3); *see also* (*id.* at 7–14) (arguments related Washington's exhausted grounds). Consequently, Respondent asks that Washington's Petition be denied. *See* (*id.* at 3, 14).

## II.   DISCUSSION

Washington asserts both exhausted and procedural defaulted claims. Washington's procedurally defaulted claims cannot support his Petition for habeas relief. Also, his exhausted claims concern suppression issues under the Fourth Amendment that are not reviewable in federal court. Consequently, this Court recommends that Washington's entire Petition be denied. The Court first begins with a discussion of Washington's procedurally defaulted grounds and then addresses the remaining two exhausted grounds.

### A.   Legal Standard

An application for writ of habeas corpus is only available to those in custody that exhaust their available state remedies. See 28 U.S.C. § 2254(b)–(c). Exhaustion is a federal requirement that "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). As a result, "state prisoners must give the state courts one full opportunity to resolve any [federal] constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* Stated differently:

4

> [b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted) (internal quotation marks omitted). Fair presentation of a claim occurs when "the state court rules on the merits of [the petitioner's] claims, or if [the petitioner] presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). That is, to exhaust a claim for federal habeas relief it must be fairly presented to each appropriate state court. *See Baldwin*, 541 U.S. at 29; *Gentry*, 175 F.3d at 1083.

If a claim is unexhausted, but no state court remedy exists (because, e.g., procedural rules would prevent further attempts at exhaustion), the claim is also considered procedurally defaulted. *See McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). Whether a petitioner procedurally defaults his federal habeas claim is a question of state law. *See Armstrong v. Iowa*, 418 F.3d 924, 926 (8th. Cir. 2005) (stating that "if no state court remedy is available for the unexhausted claim" federal courts cannot conduct "review of the defaulted claim" (internal quotation marks omitted)). As a result, when a claim is procedurally defaulted, federal courts are prevented from adjudicating the claim on the merits unless a petitioner can demonstrate cause and prejudice, "or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (internal quotation marks omitted).

In situations where a federal habeas claim before a federal court is properly asserted, relief should not be granted unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law." 28 U.S.C. § 2254(d)(1). That is, the question becomes "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). This is a deferential standard; the federal court "must deny a writ—even if [it] disagree[s] with the state court's decision—so long as that decision is reasonable in view of all the circumstances." *May v. Iowa*, 251 F.3d 713, 716 (8th Cir. 2001) (citing *Williams*, 529 U.S. at 409–13).

### B. Analysis

Based on a careful review of the record and Washington's Petition, this Court concludes that grounds one, two, five, six, and seven are procedurally defaulted. Furthermore, while grounds three and four are exhausted, the Court may not review them in light of *Stone v. Powell*, 428 U.S. 465 (1976).

#### 1. Procedurally Defaulted Grounds

Washington's grounds one, two, five, six and seven related to: cumulative errors at trial; empaneling of biased jury members; ineffective assistance of trial counsel; a biased trial judge; and violations of his speedy trial rights, respectively, were not fairly presented to the Minnesota Supreme Court. Critically, Washington raised five issues in his Petition for Review before the Minnesota Supreme Court: (1) was the search of Washington's grocery bag a violation of *Terry*; (2) did the Court of Appeals err when it considered certain arguments related to inevitable discovery for the first time on appeal; (3) did the Minnesota Court of Appeals "err by upholding the search of [Washington's] bag"; (4) did the Minnesota Court of Appeals err by determining that the contents of Washington's grocery bag would be inevitably discovered on the basis of Washington's outstanding warrant for his arrest; and (5) did the Minnesota Court of Appeals err when it held the swabbing of Washington's fingernails was valid as a search incident to arrest.

(App. at 14–15, 19–24). That is, each of the issues raised in Washington's Petition for Review before the Minnesota Supreme Court touch on different aspects of the suppression of evidence that were appealed to the Minnesota Court of Appeals. *See* (App. at 132–33) (asking the Minnesota Court of Appeals to overturn Washington's conviction because of an unlawful search and seizure of Washington's grocery bag without a warrant and the unlawful seizure of DNA evidence from Washington's hands that exceeded the scope of the obtained search warrant). In other words, none of the issues raised in Washington's Petition for Review are related to any of his grounds related to cumulative errors at trial, empaneling of biased jury members, ineffective assistance of trial counsel, a biased trial judge, or violations of his speedy trial rights in his instant Petition.

As a result, these claims were not fairly presented and remain unexhausted. *See Baldwin*, 541 U.S. at 29. These unexhausted claims are procedurally defaulted, however, under *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976). *Knaffla* bars collateral review in state court either when the issue was litigated on direct appeal, or when the issue should have been raised on direct appeal but was not. *Knaffla*, 243 N.W.2d at 741. Here—except for his ineffective assistance of trial counsel and biased judge grounds—Washington's grounds were included in a pro se brief submitted to the Minnesota Court of Appeals. *See* (App. at 109–12, 115–17, 117–21) (raising issues related to a biased jury, violations of his speedy trial rights, cumulative errors, respectively). The Minnesota Court of Appeals "considered these . . . arguments and [found] them to be either meritless or unsupported by legal authority and argument." *Washington*, 2017 WL 1842830, at *5. Thus, grounds one, two, and seven were litigated on direct appeal, and any attempt by Washington to relitigate them would be barred by *Knaffla*. 243 N.W.2d at 741. Furthermore, at the time Washington filed his pro se brief with the Minnesota Court of Appeals,

7

he knew or should have known of the conduct he alleges that gave rise to his ineffective assistance of counsel and biased judge grounds but failed to do so. As a result, application of *Knaffla* procedurally bars grounds five and six from further review in state court as well. 243 N.W.2d at 741.

That said, there are certain exceptions under *Knaffla*, that might prevent its application, but none of those exceptions are present here. Under *Knaffla*, "[t]he primary exceptions . . . are where a novel legal issue is presented, or the interest of fairness require relief." *Murphy*, 652 F.3d 845, 849 (8th Cir. 2011) (citing *Washington v. State*, 675 N.W.2d 628, 630 (Minn. 2004)). Simply put, there is nothing in Washington's Petition that is novel, nor do any of grounds one, two, five, six, and seven suggests that interests of justice require review. Consequently, Washington has procedurally defaulted grounds one, two, five, six, and seven.

For Washington's procedural default to be excused, he must "demonstrate cause and prejudice for the default." *Armstrong*, 418 F.3d at 926 (internal quotation marks omitted). Here, Washington provides no reasons why his procedural default should be excused. *See generally* (Pet.). This may be in part because Washington asserts that he exhausted these claims, but he is mistaken. *Compare, e.g.*, (Pet. at 5) (stating that the Minnesota Supreme Court declined review of Washington's "cumulative errors" grounds), *with* (App. at 14–24) (the Petition for Review before the Minnesota Supreme Court, which does not include review related to "cumulative errors"). Because the Court cannot independently identify any cause or prejudice excusing the procedural default, and because Washington has not provided reasons that would demonstrate cause and prejudice for the default, his unexhausted grounds one, two, five, six, and seven are procedurally defaulted. *See Armstrong*, 418 F.3d at 926.

   2.    **Washington's Exhausted Grounds**

Washington raised grounds three and four of the instant Petition before both the Minnesota Court of Appeals and the Minnesota Supreme Court *See, e.g.*, (App. at 132–33) (issues raised on direct appeal before the Minnesota Court of Appeals); (*id.* at 14–24) (Petition for Review before the Minnesota Supreme Court). Thus, grounds three and four in the instant Petition are exhausted. *Cf. Baldwin*, 541 U.S. at 29. Typically, the Court would consider whether the state court decisions are contrary to "clearly established federal law." *See Williams* 529 U.S. at 409. In this case, however, Washington's grounds three and four are *Stone*-barred and are unreviewable in federal court. *See Stone*, 428 U.S. at 494; *Willett v. Lockhart*, 37 F.3d 1265, 1266 (8th Cir. 1994).

In *Stone*, the Supreme Court concluded "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494 (footnotes omitted). The Eighth Circuit has established a two-part test for determining whether a petitioner has been provided with a "an opportunity for full and fair litigation of a Fourth Amendment claim" as required by *Stone*. In *Willett v. Lockhart*, the Eighth Court adopted a test used in the Second Circuit (and in accord with sister circuits), namely that the petition must show: "'(a) . . . the state has provided **no corrective procedures at all** to redress the alleged fourth amendment violations; or (b) . . . the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an **unconscionable breakdown in the underlying process**.'" 37 F.3d at 1271 (8th Cir. 1994) (emphasis in original) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)). That is, if Washington asserts grounds for habeas relief based on a state court's decision not to suppress evidence in violation of the Fourth Amendment, he bears the heavy burden of

9

demonstrating the absence of procedural mechanisms for bringing his Fourth Amendment challenge or that the provided mechanisms were unavailable to him. *Id.* This Court concludes that Washington has asserted grounds that would be *Stone*-barred and that he failed to meet his burden demonstrating that *Stone* should not apply.

Washington's grounds three and four concern suppressions issues related to the admissibility of the contents of a grocery bag Washington had in his possession at time of his arrest and DNA recovered from underneath Washington's fingernails after his arrest. *See* (Pet. at 2–3, 8–10). This evidence, Washington argues, should have been suppressed at trial. *See* (*id.*). Washington's grounds fall squarely into the category of suppression issues in which *Stone*'s holding addresses. *See* 428 U.S. at 494. Washington, therefore, must demonstrate that the protections afforded to him under the Fourth Amendment were unavailable to him during his state court trial. *See Willett*, 37 F.3d at 1271. Washington, however, does not argue a lack of procedural mechanisms that would avoid the application of *Stone* in the instant case, and the record would not support such a finding even if asserted. *See Washington*, 2017 WL 1842830, at *1 (stating "Washington argues that the district court erred by denying his motion to suppress evidence"). This is fatal to Washington's ability to seek habeas relief for grounds three and four of his Petition. Specifically, in *Willett*, the Eighth Circuit held "a Fourth Amendment claim is *Stone*-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." 37 F.3d at 1273; *see also Stone*, 428 U.S. at 494. Here, Washington cannot support his burden that there was no procedure in place or that he was foreclosed from bringing a Fourth Amendment challenge in state court.

Simply put, Washington cannot demonstrate he lacked procedural mechanisms to bring Fourth Amendment challenges because he challenged the admissibility of this evidence under the Fourth Amendment at trial. *See Washington*, 2017 WL 1842830, at *1. Under *Willett*, regardless of the how Washington's motion to suppress before the Minnesota state court was decided, the Court is *Stone*-barred from reviewing Washington's Fourth Amendment grounds.[4] *See* 37 F.3d at 1273. Consequently, this Court recommends that grounds three and four of Washington's Petition be denied.

### 3. Conclusion

Because grounds one, two, five, six, and seven are procedurally defaulted, and because grounds three and four are *Stone*-barred, Washington's Petition should be denied.

## III. CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal a denial of his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he

---

[4] Furthermore, it is undisputed that Washington identified himself to police and that he was the subject of an outstanding arrest warrant separate and apart from the allegations of which he was eventually convicted. *See Washington*, 2017 WL 1842830, at *2–3. Thus, even if the Court was not *Stone*-barred from reviewing grounds three and four, nothing suggests that the state court decisions are contrary to established federal law. *See, e.g.*, *Rawlings v. Kentucky*, 448 U.S. 98, 110–111 (1980) (stating that once probable cause to arrest the suspect has been established, "[w]here the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa"); *United States v. Robinson*, 414 U.S. 218, 236 (1973) (holding that "[h]aving in the course of a lawful search come upon the crumpled package of cigarettes, he was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them"); *Cupp v. Murphy*, 412 U.S. 291, 296 (1973) (concluding that a warrantless seizure of fingernail scrapings was not a violation of the Fourth Amendment because officers were justified to preserve the "highly evanescent evidence").

petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Washington's claims for federal habeas relief any differently than they have been decided here. Washington has not identified (and the Court cannot independently discern) anything novel, noteworthy, or worrisome about this case that warrants appellate review. Therefore, the Court recommends that Washington not be granted a COA in this matter.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Keith Eugene Washington's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] should be **DENIED**;

2. This case be **DISMISSED with prejudice**; and

3. No certificate of appealability should be issued.

Dated: June 29, 2018

                                   *s/Steven E. Rau*
                                    STEVEN E. RAU
                                    United States Magistrate Judge

**Notice**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14

days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).